IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CODY CHEYNEY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 21-5112** |
| **v.** | : | |
| | : | |
| **LIBERTY MUTUAL INSURANCE GROUP INC.**, *et al.* | : | |
| | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                       FEBRUARY 11, 2022

# MEMORANDUM OPINION

**INTRODUCTION**

This case is a declaratory judgment action commenced in the Court of Common Pleas of Chester County, Pennsylvania, which was removed by Defendant LM General Insurance Company to this Court. [ECF 1]. Before this Court is a *motion to remand*, [ECF 4], filed by Plaintiff Cody Cheyney ("Plaintiff"), requesting that this Court decline to exercise jurisdiction over the underlying declaratory judgment action and remand this case to the state court from which it was removed. Defendants[1] oppose the motion. [ECF 8].

Briefly, the relevant facts to the motion to remand are the following:

Plaintiff alleges that he was severely injured while operating his motorcycle in Philadelphia, Pennsylvania. The liability insurer for the tortfeasor, Progressive Insurance Company, tendered its $15,000 liability limit, which was accepted with the consent of Defendant LM General Insurance Company. At the time of the motorcycle accident, Plaintiff was the named insured on two insurance policies issued by Progressive, *to wit*: a policy covering the motorcycle which did not provide underinsured motorist ("UIM") coverage and a personal automobile policy that provided $25,000.00 in stacked UIM coverage. Plaintiff was also insured by a LM General Insurance Company personal automobile policy issued to his parents with whom he resided. The LM General Insurance Company policy includes

---

[1] The Defendants are Liberty Mutual Insurance Group Inc., LM General Insurance Company, Liberty Mutual Insurance, Liberty Mutual Group, and Liberty Mutual (collectively, "Defendants" or "Liberty Mutual").

$250,000.00 in UIM coverage.  The named insured on the LM General Insurance Company policy executed a stacking waiver limited to intra-policy stacking.  LM General Insurance Company denied Plaintiff's claim for coverage under the policy, relying on the policy's "household vehicle exclusion".[2]

The parties have briefed the issues raised in Plaintiff's motion to remand, and these issues are ripe for disposition.  For the reasons set forth herein, Plaintiff's motion to remand is denied.

**BACKGROUND**

As noted, Plaintiff seeks a declaration that Defendants—who issued Plaintiff's parents an automobile insurance policy—are required to provide Plaintiff full UIM coverage for injuries he suffered as a result of a motorcycle accident.  Defendants denied Plaintiff's claim for UIM coverage on the basis that such coverage was excluded by the policy's "household vehicle exclusion."

Defendants removed this declaratory judgment action to this Court on the basis of diversity jurisdiction.[3]  Plaintiff argues, in the underlying motion to remand, that this Court should decline to exercise its discretionary jurisdiction because this matter involves an unsettled and novel issue of state law.  Defendants disagree.

**DISCUSSION**

In support of his remand argument that this case involves an unsettled and novel issue of state law, Plaintiff points to the Supreme Court of Pennsylvania's (the "Supreme Court") recent grant of allocator in the matter of *Erie Insurance Exchange v. Mione*, No. 326 MAL 2021 (Pa.

---

[2]     A household vehicle exclusion is a provision that denies coverage to an insured or an insured's family member for a motor vehicle that is not covered for UIM coverage.  *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1006-07 (Pa. 1998).

[3]     There is no dispute that this Court possesses jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

Nov. 30, 2021), an insurance coverage action allegedly involving similar facts and legal issues. However, as argued by Defendants and discussed below, the case *sub judice* does not involve an unsettled and/or novel issue of state law. Additionally, the relevant so-called *Reifer* factors, (particularly, the lack of a parallel state action), which this Court must consider, weigh in favor of this Court exercising jurisdiction.

Generally, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon the by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Actions for declaratory judgment, however, implicate an exception to this rule. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014). Specifically, the Declaratory Judgment Act ("DJA") provides that "any court of the United States . . . **may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Clearly, the DJA confers discretionary, rather than compulsory, jurisdiction upon federal courts. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). "This is an exception to the general rule that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Reifer*, 751 F.3d at 134 (internal quotations omitted). Any determination regarding the propriety of exercising jurisdiction under the DJA must be made on a case-by-case basis and is "governed by considerations of practicality and wise judicial administration." *Id.* (internal quotations omitted).

In *Reifer*, the United States Court of Appeals for the Third Circuit (the "Third Circuit") outlined the following set of factors that, to the extent relevant, should be considered by district courts when deciding whether to exercise declaratory jurisdiction:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;

3

> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146.

The Third Circuit further held that although "the existence or non-existence of pending parallel state proceedings is but one factor for the district court to consider," this factor deserves "increased emphasis," and "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction." *Id.* at 144. Relying on *Reifer*, district courts have held that the absence of pending parallel state proceedings creates a presumption in favor of exercising jurisdiction. *See, e.g.*, *Western World Ins. Co. v. Alarcon & Marrone Demolition*, 2015 WL 3622896, at *2 (E.D. Pa. June 9, 2015); *Nationwide Prop. & Cas. Ins. Co. v. Shearer*, 2015 WL 1186008, at *6 (W.D. Pa. Mar. 13, 2015). In *Brillhart*, the United States Supreme Court described a pending "parallel" proceeding as one "presenting the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. To constitute a parallel state proceeding, the proceeding must permit "all matters in controversy between the parties" to "be fully adjudicated." *Id.*

Here, the parties agree that there is no parallel state proceeding. As such, the absence of a pending parallel state proceeding in this matter "militates significantly in favor of exercising jurisdiction," *Reifer*, 751 F.3d at 144, and there is a presumption in favor of exercising declaratory jurisdiction that can only be overcome if outweighed by the other *Reifer* factors. Notably, Plaintiff

4

provides no argument as to the application of the other *Reifer* factors. Instead, Plaintiff focuses his argument entirely on his contention that this action involves an unsettled and novel question of Pennsylvania state law. In the absence of any argument to the contrary, it appears that the other *Reifer* factors tend to weigh in favor of exercising declaratory jurisdiction.

As to Plaintiff's argument that this action involves novel or unsettled issues of state law, the Third Circuit recently provided:

> "[W]hen applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction." Further, "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'" Yet, we have cautioned that there can be no *per se* dismissal of insurance declaratory judgment actions, in part because "[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts." In weighing these factors, "district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." With respect to state law claims, district courts should "squarely address" the alleged novelty or undetermined nature of state law issues.

*DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 197 (3d Cir. 2021) (internal citations omitted). Thus, this Court must address the purported novel and/or unsettled nature of the issue before it.

Plaintiff contends that the "unsettled" issue in this case is whether the decision of the Supreme Court in *Gallagher v. Geico*, 201 A.3d 131 (Pa. 2019), which invalidated certain "household exclusions" in automobile insurance policies in Pennsylvania on public policy grounds, also invalidates the "household exclusion" in the personal automobile insurance policy issued by Defendants to Plaintiff's parents where Plaintiff's own insurance policy, covering the motorcycle Plaintiff was operating at the time of the accident, did not provide UIM coverage. In response, Defendants argue that the precise issue before this Court was addressed by the Supreme

5

Court in a previous decision, *Eichelman v. Nationwide Insurance Co.*, 711 A.2d 1006 (Pa. 1998), a decision not upset by the later decision in *Gallagher*. This Court agrees with Defendants.

In *Eichelman*, the plaintiff was injured when his motorcycle was struck by another vehicle. *Id.* at 1007. The plaintiff's motorcycle was insured by Aegis Security Insurance Company through a policy that did not provide UIM benefits because the plaintiff had waived such coverage. *Id.* Notwithstanding, the plaintiff made a claim for UIM benefits under two insurance policies that the plaintiff's mother and her husband maintained with Nationwide. *Id.* Nationwide denied coverage on the basis of a "household exclusion" that explicitly precluded UIM coverage for bodily injury suffered while occupying a motor vehicle that was not insured for UIM coverage. *Id.* The plaintiff argued that the exclusion, as applied, was void as against public policy. *Id.* Rejecting the plaintiff's argument, the Supreme Court held:

> [A] person who has voluntarily elected not to carry underinsured motorist coverage on his own vehicle is not entitled to recover underinsured motorist benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous "household exclusion" language explicitly precludes underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage.

*Id.* at 1010. In so holding, the Supreme Court rejected the plaintiff's public policy arguments.

The facts and legal issues in *Eichelman* are nearly identical to those in the case *sub judice*: (1) Plaintiff's motorcycle insurance policy does not provide UIM coverage; (2) Plaintiff is seeking UIM benefits from a separate policy issued to his parents, with whom he lives; (3) that separate policy contains a "household exclusion" similar to that at issue in *Eichelman*; and (4) Plaintiff is arguing that the exclusion is void as against public policy. Under such circumstances, this Court cannot conclude that this case presents novel or unsettled issues of Pennsylvania state law.

Without any reference to the Supreme Court's decision in *Eichelman*, Plaintiff argues that the "household exclusion" in Defendant's policy is void as against public policy and relies on the Supreme Court's decision in *Gallagher* in support. Plaintiff's reliance, however, is misplaced. As recognized by several state and federal courts in Pennsylvania, *Gallagher* did not overturn or upset the decision in *Eichelman*. *See Dunleavy v. Mid-Century Ins. Co.*, 460 F. Supp. 3d 602, 610 (W.D. Pa. 2020) ("*Gallagher* did not overrule *Eichelman* because the two cases 'are not in conflict.'"), *aff'd*, 848 F. App'x 528 (3d Cir. 2021); *Butta v. GEICO Cas. Co.*, 383 F. Supp. 3d 426, 431 (E.D. Pa. 2019) ("The Pennsylvania Supreme Court in *Gallagher* did not overrule or modify . . . *Eichelman* . . . ."). Indeed, just six months ago, the Supreme Court acknowledged that its decision in *Gallagher* did not upset its precedent in *Eichelman*. *See Donovan v. State Farm Mut. Auto. Ins. Co.*, 256 A.3d 1145 (Pa. 2021). In *Donovan*, the Supreme Court wrote:

> The Donovans argue not only for the applicability of *Gallagher* but also for reevaluation of this Court's prior precedent including . . . *Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006 (1998), which upheld the validity of the household vehicle exclusion. In contrast, State Farm asserts that the Court in *Gallagher* limited its decision to "the facts of this case" and did not abrogate the prior decisions that had upheld other applications of the household vehicle exclusion including . . . *Eichelman.* State Farm's Brief at 19. We observe that this Court in . . . *Eichelman* did not address the interplay between the absence of a valid waiver of stacked coverage and the household vehicle exclusion as was central to the holding in *Gallagher*. Accordingly, we find those cases distinguishable as the relevant challenge was not before this Court.

*Id.* at 1159 n.19; *see also Erie Ins. Exchange v. Mione*, 253 A.3d 754, 767 (Pa. Super. 2021) ("[W]e cannot agree with Appellants that *Eichelman* has been overruled and/or does not control here."). Because *Eichelman* remains good law, Plaintiff's reliance on *Gallagher* to support his contention that the issues presented in this case are novel and/or unsettled is unsubstantiated.

7

As discussed above, the precise issue in the motion to remand was previously decided by the Supreme Court of Pennsylvania in *Eichelman*, a decision the Supreme Court has acknowledged was not overturned by *Gallagher*. Under these circumstances, this Court cannot conclude that the issue is novel or unsettled such that this Court should decline to exercise jurisdiction. Accordingly, Plaintiff's motion to remand is denied, and this Court will exercise jurisdiction over this declaratory judgment action.[4]

**CONCLUSION**

Because the argument and issues in the motion for remand are not novel or unsettled, and for the reasons herein mentioned, Plaintiff's motion to remand is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.

---

[4] While the Supreme Court's recent decision to grant allocator in a similar case does not make the issue one that is either novel or unsettled, it may weigh in favor of a stay of this matter, if requested, pending the Supreme Court's decision in *Mione*. Briefing in *Mione* is set to close on February 23, 2022.